| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------x<br>　　　　　　　　　　　　　　　　　　　　　　　:<br>VINH DINH,　　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　Petitioner,　　　:<br>　　　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　- against -　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　　　　　:<br>DAVID A. ROCK, Superintendent of the　　　　:<br>Upstate Correctional Facility,　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　　　　　　　　Respondent.　　:<br>----------------------------------------------------------------x | <u>FOR ONLINE PUBLICATION ONLY</u><br><br><br><br><u>MEMORANDUM AND ORDER</u><br><br>11-CV-2640 (JG) |

A P P E A R A N C E S :

      VINH DINH
           # 08-A-0998
           Upstate Correctional Facility
           309 Bare Hill Road
           P.O. Box 2001
           Malone, New York 12953

           Petitioner, *Pro se*

      RICHARD A. BROWN
           District Attorney, Queens County
           125-01 Queens Boulevard
           Kew Gardens, New York 11415
  By:   John M. Castellano
           Johnnette Traill

      Attorney for Respondent

JOHN GLEESON, United States District Judge:

      Vinh Dinh, who is currently incarcerated at Upstate Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  After a jury trial in the Supreme Court of New York, Queens County, Dinh was convicted of one count of gang assault in the first degree, two counts of assault in the second degree and one count of criminal possession of a weapon in the fourth degree.  Dinh was sentenced to an indeterminate term of

imprisonment of 22 years to life on the gang assault count and lesser concurrent terms on the remaining counts. He now seeks habeas relief on two grounds: (1) the prosecutor engaged in misconduct during the course of the trial by making improper remarks during his cross-examination of Dinh and in his summation; and (2) Dinh's appellate counsel provided ineffective assistance by failing to obtain a Vietnamese interpreter and not raising certain arguments on appeal. For the reasons stated below, the petition is denied.

## BACKGROUND

A.  *The Offense Conduct*

On May 27, 2007, Dinh was at a bar in Queens, New York, where he had spent several hours drinking liquor with friends. Another patron, Laing Qun Zou, got into a dispute with members of Dinh's group. After Zou punched one member of the group, Dinh and his friends attacked and beat Zou. When Zou was already lying on the floor, Dinh picked up a bar stool and hit Zou in the head with it, causing the metal legs on the stool to bend from the impact. Zou was left bleeding and unconscious on the floor. He was later hospitalized and suffered injuries including lacerations and a fracture of the orbital bone in his right eye. The entire incident was recorded by surveillance cameras in the bar.

B.  *Trial Proceedings*

Dinh was charged with one count of gang assault in the first degree, in violation of N.Y. Penal Law § 120.07, two counts of assault in the second degree, in violation of N.Y. Penal Law § 120.05(1) & (2), and one count of criminal possession of a weapon in the fourth degree, in violation of N.Y. Penal Law § 265.01(2). His trial took place over the course of several days in January 2008.

The evidence at trial included the video recording of the attack. Dinh, testifying in his defense, did not dispute that he was one of the assailants recorded in the video. However, he testified that he did not remember what happened that night because he had been extremely intoxicated, and that the attack was therefore not his fault.

In light of Dinh's testimony, the trial court instructed the jury on intoxication. Under New York law, "[i]ntoxication is not, as such, a defense to a criminal charge; but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged." N.Y. Penal Law § 15.25.

At the close of the prosecution's case, the trial court questioned why the indictment charged Dinh with "acting in concert" with others. According to the trial court, a charge of gang assault would ordinarily require proof only that the defendant was aided by two or more persons, regardless of those other persons' intent. Trial Tr. 454–55. However, the trial court reasoned that by charging Dinh with acting in concert with others, the prosecution would have to prove the intent of those other persons: "The gang assault statute only requires you to show that this defendant intended to cause serious physical injury. By charging acting in concert you are now saying that the other people also had to have that intent." *Id.* at 456–57. The trial court directed the prosecutor to research whether it would be permissible to strike the references to "acting in concert" from the indictment and reserved decision on that issue. *See id.* at 457–58. Shortly before instructing the jury, the trial court ruled, over Dinh's objection, that the deletion of the "acting in concert" language was proper. *See id.* at 498; *see also id.* at 493–94.

3

The jury found Dinh guilty on all counts. On February 13, 2008, the trial court sentenced Dinh, as a persistent violent felony offender to: (i) an indeterminate term of imprisonment of 22 years to life for the gang assault; (ii) an indeterminate term of imprisonment of 12 years to life for the two assault counts; and (iii) a determinate term of imprisonment of one year for the weapon possession. All of the sentences are concurrent.

C. *Direct Appeal*

Dinh appealed to the Appellate Division of the Supreme Court of New York, Second Department. Dinh argued that the prosecutor's improper remarks during his cross-examination of Dinh and summation deprived him of a fair trial.

The Appellate Division affirmed. *See People v. Dinh*, 892 N.Y.S.2d 910 (App. Div. 2d Dep't 2010). The court first held that Dinh's "contentions that the prosecutor engaged in misconduct both while cross-examining him and during his summation are unpreserved for appellate review." *Id.* at 910. It then held, "[i]n any event," that "the complained-of questioning fell within the bounds of proper cross-examination" and that "most of the prosecutor's summation constituted fair comment upon the evidence or a fair response to the defense summation." *Id.* (internal quotation marks and citation omitted). Finally, it concluded that "any improper comments constituted harmless error." *Id.*

Dinh sought leave to appeal to the New York Court of Appeals. In his leave application, Dinh added a claim that his trial counsel's failure to preserve his arguments regarding prosecutorial misconduct constituted ineffective assistance of counsel. A judge of the Court of Appeals denied leave to appeal. *People v. Dinh*, 927 N.E.2d 567 (N.Y. 2010) (Graffeo, J.).

4

D.       *Application for a Writ of Error* Coram Nobis

On July 30, 2010, Dinh applied to the Appellate Division for a writ of error *coram nobis*, arguing that he had received ineffective assistance from the attorney that handled his direct appeal.[1]  Dinh argued that his appellate counsel was ineffective for several reasons.  First, he argued that Dinh could not communicate with his counsel in English and that counsel should have therefore obtained a Vietnamese interpreter.  Second, Dinh argued that his counsel was deficient for failing to raise additional arguments on appeal, namely, that the trial court erred in allowing the prosecution to delete the "acting in concert" language from the indictment and that the evidence was insufficient to establish that Dinh had caused serious physical injury to Zou.

The Appellate Division denied the *coram nobis* application, stating without explanation that Dinh had "failed to establish that he was denied the effective assistance of appellate counsel."  *People v. Dinh*, 915 N.Y.S.2d 278, 278 (App. Div. 2d Dep't 2010).  A judge of the Court of Appeals denied leave to appeal.  *People v. Dinh*, 949 N.E.2d 978 (N.Y. 2011) (Smith, J.).

E.       *The Present Petition*

In his federal habeas petition, Dinh asserts two grounds for relief.  First, he argues that he was deprived of a constitutionally fair trial by prosecutorial misconduct.  He claims, as he did on his direct appeal, that the prosecutor's remarks while cross-examining him and during summation were improper and prejudicial.  Second, he argues that he received ineffective assistance of appellate counsel.  He claims, as he did in his *coram nobis* application, that his appellate counsel should have obtained a Vietnamese interpreter and should have raised arguments regarding the amendment to the indictment and the sufficiency of the evidence.

---

[1] "In New York, coram nobis is the appropriate remedy for ineffective assistance of appellate counsel." *Sweet v. Bennett*, 353 F.3d 135, 141 n.7 (2d Cir. 2003).

5

DISCUSSION

A.  *Standard of Review*

Where a state court has adjudicated a claim on the merits, a federal habeas court must apply a highly deferential standard of review. Habeas relief may be granted only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).[2]

A state court's decision is contrary to Supreme Court precedent if its "conclusion on a question of law is opposite to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision on a set of materially indistinguishable facts." *Richard S. v. Carpinello*, 589 F.3d 75, 80 (2d Cir. 2009) (internal quotation marks and citations omitted), *cert. denied*, 131 S. Ct. 161 (2010). A state court unreasonably applies Supreme Court precedent "if it correctly identifies the governing legal principle but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case." *Id.*

This standard is "difficult to meet" and requires giving the state court's decision "the benefit of the doubt." *Pinholster*, 131 S. Ct. at 1398 (internal quotation marks and citations omitted). Relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

---

[2] Since the Appellate Division did not make any factual determinations, I need only address whether its decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

6

In addition, a court analyzing whether a state court has unreasonably applied federal law must consider the specificity of the federal standard at issue. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 131 S. Ct. at 786 (quoting *Alvarado*, 541 U.S. at 664) (alteration in original) (internal quotation marks omitted). Dinh's claims of prosecutorial misconduct and ineffective assistance of counsel, discussed below, both involve relatively general rules, and § 2554(d) gives state courts considerable leeway in applying them. *See id.* at 788 (standard for ineffective assistance is general); *Coleman v. Dzurenda*, No. 3:04CV2004 (MRK), 2007 WL 3145096, at *10 (D. Conn. Oct. 25, 2007) (standard for assessing whether improper remarks by a prosecutor deprived a defendant of a fair trial "constitutes a general rule").

B.      *Prosecutorial Misconduct*

Improper remarks by a prosecutor during the course of a criminal trial can rise to the level of an unconstitutional deprivation of the right to a fair trial. *Darden v. Wainwright*, 477 U.S. 168, 180–81 (1986). However, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.* at 181 (internal quotation marks and citation omitted). "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11–12 (1985).

To establish a constitutional violation, the improper remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)) (internal quotation marks omitted); *see also Jenkins v. Artuz*, 294 F.3d 284, 294–95 (2d Cir.

7

2002). Thus, improper remarks by a prosecutor "do not amount to a denial of due process unless they constitute egregious misconduct." *United States v Elias*, 285 F.3d 183, 190 (2d Cir. 2002) (internal quotation marks and citations omitted); *see also Miranda v. Bennett*, 322 F.3d 171, 180–81 (2d Cir. 2003). In assessing whether prosecutorial misconduct resulted in an unconstitutional conviction, a court must consider the improper remarks in the context of the trial as a whole. *See Young*, 470 U.S. at 11 (a prosecutor's alleged misconduct "must be viewed in context"); *Donnelly*, 416 U.S at 643 (assessment of whether prosecutorial remarks deprived defendant of a fair trial requires "examination of the entire proceedings"); *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994) ("[W]e must evaluate the challenged remarks in the context of the trial as a whole . . . .").

Dinh's prosecutorial misconduct claim was considered by the Appellate Division and rejected on the merits. Although the Appellate Division held that Dinh's challenges to the prosecutor's remarks were unpreserved, it then held – "[i]n any event" – that these challenges were without merit or constituted harmless error. *People v. Dinh*, 892 N.Y.S.2d 910, 910 (App. Div. 2d Dep't 2010). This alternative holding is an adjudication on the merits. *See Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004); *Robinson v. LaClair*, No. 09-CV-3501 (KAM), 2011 WL 115490, at *7 (E.D.N.Y. Jan. 13, 2011). As a result, Dinh cannot obtain habeas relief on this claim unless he can show the Appellate Division's decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

Dinh challenges the following remarks made by the prosecutor during his cross-examination of Dinh:

- In response to Dinh's testimony that the beating of Zou was "not my fault because I was [so] intoxicated," the prosecutor asked, "Whose fault is it?" Trial Tr. 464.

8

> The trial court overruled Dinh's objection to this question, and Dinh reiterated his statement that he was not at fault. *Id.* Later, the prosecutor again asked "who is at fault" and the trial court sustained Dinh's objection. *Id.* at 473.

- The prosecutor asked, "What was your intention when you crashed the stool down on [Zou's] head [–] was it to give him a better seat[?]" *Id.* at 465. The trial court sustained Dinh's objection to this question. The prosecutor then restated this question without the sarcastic portion and the trial court again sustained an objection on the ground that Dinh had already testified that he did not remember the incident. *Id.*

- The prosecutor asked, "who else is it that drags [Zou] around the floor if it's not your will[?] Who else made it happen[?]" *Id.* at 467. The trial court sustained Dinh's objection to this question. *Id.*

- After Dinh stated that he "really want[s] to say sorry to Mr. Zou," the prosecutor asked, "But you never sa[id] you are sorry did you?" *Id.* at 475. The trial court sustained Dinh's objection to this question. *Id.*

Dinh also challenges the following portions of the prosecutor's summation:

- Attributing blame and fault for Zou's injuries on Dinh. *Id.* at 520–21; *see also id.* at 549.

- Comparing Dinh's claim that he was not responsible for his actions while he was intoxicated to the story of Dr. Jekyll and Mr. Hyde and calling this "a work of fiction." *Id.* at 521.

- Analogizing Dinh's conduct to that of a drunk driver. *Id.* at 524.

Considered in isolation or in combination, these remarks did not deprive Dinh of a fair trial. The prosecutor's cross-examination of Dinh was aggressive and may have occasionally crossed the line into impermissible territory.³ However, most of the challenged questioning triggered objections from defense counsel that the trial court sustained. The trial court twice instructed the jury – at the beginning of the case and right before deliberations began – that questions asked and arguments or remarks made by the attorneys were not evidence and that if an objection to a question was sustained the jury should not consider the question itself. *See*

---

³ For instance, the prosecutor's sarcastic question of whether Dinh had crashed a bar stool on Zou's head to give him a better seat was inappropriate. The question as to whether Dinh had ever told Zou he was sorry was also improper.

9

Trial Tr. 291–94, 560, 565–66.  Jurors are generally presumed to follow a trial court's instructions, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and the prejudicial effect of misconduct of the type alleged here is greatly minimized when the jury observes court disapproval of it at the time it occurs.  Accordingly, this questioning did not deprive Dinh of a fair trial.  *See Darden*, 477 U.S. at 182 (improper comments did not deprive habeas petitioner of a fair trial where the "trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence").

Although the trial court did, initially, allow the prosecutor to question Dinh as to fault, this did not deprive him of a fair trial.  The question was in response to Dinh's repeated testimony that what happened to Zou was not his fault.  Even assuming *arguendo* it was improper for the prosecutor to ask Dinh who was at fault in response, this questioning was not nearly so egregious as to deprive Dinh of a fair trial.

The prosecutor's remarks during summation also do not rise to the level of a constitutional violation.  First, there is nothing improper about a prosecutor arguing that the blame for a crime should be placed on the defendant.  Issues of blame and fault are at the heart of any criminal case.  This is especially so in this case because, before the challenged summation, Dinh's own summation had implied that others, such as the bar that sold Dinh excessive alcohol, deserved the blame.  *See id.* (court assessing whether prosecutor's summation deprived defendant of a fair trial should consider whether "the objectionable content was invited by or was responsive to the opening summation of the defense").

Second, it was not improper for the prosecutor to compare Dinh's defense – that he never would have beaten Zou if he had not been drunk – to the tale of Dr. Jekyll and Mr. Hyde.  The prosecutor said:

> We have all heard this before. It's a famous work of . . . Doctor [Jekyll] and Mr. Hyde. Do you know what it is. It's a work of fiction. We do not in our society allow people to say hey it's the other me. Unless someone is absolutely really schizophrenic in the legal sense of [the] word which no one is talking about here. You all on voir dire talked [about] how that is completely unacceptable for somebody to say hey that is the drunk me. The drunk me. Me I am a nice guy. The drunk me, whole other person.

Trial Tr. 521. Dinh does not argue that the prosecutor misstated New York's law governing intoxication. The prosecutor permissibly argued that Dinh's intoxication did not excuse his actions.

Similarly, the prosecutor's analogy of Dinh's conduct to that of a drunk driver was not improper. The prosecutor argued:

> The standard is was he so drunk. So drunk that he could not consciously intend to do something. Think about how drunk that is.
>
> Think about how drunk that is. Even someone who should not be behind the wheel of a car still says that they want to drive. When they leave they said I want to drive. I am going to take the key and put it in the door and probably go hit a telephone pole a block away. That is just common sense. They might not be of a clear mind to be able to operate the vehicle but they want to drive. It's just like what we have here. Was he drunk. Sure. Was he so drunk that he does not know what he is doing.

*Id.* at 523–24. Again, the prosecutor did not misstate the law governing intoxication. He did not argue that Dinh was strictly liable. He correctly stated that the question for the jury was whether Dinh was so drunk "that he could not consciously intend" to assault Zou. *Id.* at 524.

Finally, Dinh's claim that the prosecutor improperly referred to his testimony as a "work of fiction" is also meritless. When a defendant takes the stand, a prosecutor generally may argue to the jury that the defendant is a liar. *See, e.g.*, *United States v. Coriaty*, 300 F.3d 244, 255–56 (2d Cir. 2002); *United States v. Peterson*, 808 F.2d 969, 977 (2d Cir. 1987). The

11

reference to a "work of fiction" was neither excessive nor inflammatory and was therefore within the proper bounds of argument. *See Peterson*, 808 F.2d at 977; *Bruce v. United States*, No. 04-CV-3453 (NGG), 2006 WL 1704473, at *7 (E.D.N.Y. Jun. 12, 2006).

Considering all of these challenged remarks as a whole, and viewed in the context of the trial as a whole, there is no basis on which to conclude that Dinh was deprived of a fair trial. Although the prosecutor occasionally made improper remarks,[4] those remarks "did not manipulate or misstate the evidence, nor did [they] implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Darden*, 477 U.S. at 182. Dinh's prosecutorial misconduct claim would fail even under *de novo* review. It follows that Dinh has not met the stringent standard for federal habeas relief under § 2254(d).[5]

C.      *Ineffective Assistance of Appellate Counsel*

To establish that the assistance of counsel was constitutionally ineffective, a claimant must show that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011). To establish deficient performance, a claimant must show "that defense counsel's representation 'fell below an objective standard of reasonableness.'" *Raysor*, 647 F.3d at 495 (quoting *Strickland*, 466 U.S. at 688). In evaluating the objective reasonableness of counsel's performance, "a court must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *see also Richter*, 131 S. Ct.

---

[4] In addition to the objections sustained by the trial court during the prosecutor's cross-examination of Dinh, the trial court repeatedly sustained objections during the prosecutor's summation. *See* Trial Tr. 530–35, 542. Dinh does not challenge most of these relatively minor improprieties and, even if he did, it would not alter my conclusion that he was not deprived of a fair trial.

[5] Because I conclude that Dinh's prosecutorial misconduct claim lacks merit, I need not address the alternative argument that it is procedurally barred.

at 787.  To demonstrate prejudice, a claimant "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Raysor*, 647 F.3d at 495 (quoting *Strickland*, 466 U.S. at 694).

Appellate counsel's performance is not objectively unreasonable merely because he does not raise every non-frivolous argument available.  *See Smith v. Robbins*, 528 U.S. 259, 288 (2000); *Jones v. Barnes*, 463 U.S. 745, 753–54 (1983); *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).  "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Robbins*, 528 U.S. at 288.  "A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions."  *Barnes*, 463 U.S. at 753.

The Appellate Division rejected Dinh's ineffective assistance of appellate counsel claim on the merits, and thus the highly deferential standard of § 2254(d) applies.  Because the *Strickland* standard itself demands deference to the judgments of counsel, this deferential standard is "doubly so."  *Richter*, 131 S. Ct. at 788 (internal quotation marks and citation omitted).  And because "[t]he *Strickland* standard is a general one, . . . the range of reasonable applications is substantial."  *Id.*  "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*  As explained below, Dinh has not met the high burden for obtaining federal habeas relief on his ineffective assistance claim.

1. *Failure To Obtain an Interpreter*

Dinh claims that he was not able to communicate in English.  He therefore argues that his attorney should have obtained an interpreter, and that the failure to do so was constitutionally deficient.

13

The record demonstrates that Dinh and his appellate counsel were able to communicate effectively through the exchange of letters in English. While Dinh claims that this was only possible because he had help from people at his prison, he does not explain why this method of communication was inadequate. Notably, he does not claim he told his appellate counsel he needed an interpreter or that he was confused about anything involving his appeal. Since Dinh and his appellate counsel were able to communicate, the failure to obtain an interpreter does not establish ineffective assistance. *See United States v. Im*, No. 07 Cr. 737 (PKC), 2009 WL 2191231, at *9 (S.D.N.Y. July 17, 2009), *aff'd sub nom.*, *United States v. Chun*, 399 F. App'x 669 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 292 (2011); *Thai v. United States*, No. 99-CV-7514 (CBA), 2007 WL 13416, at *7 (E.D.N.Y. Jan. 2, 2007).

Even if Dinh were able to establish that his counsel's failure to obtain an interpreter was objectively unreasonable, his claim would fail due to a lack of prejudice. He has not shown how the result of his appeal would have been different had he been able to communicate with his appellate counsel through an interpreter.

2.  *Failure To Challenge the Amendment to the Indictment*

Dinh next claims that his appellate counsel should have argued that the last-minute amendment to the indictment was improper and prejudicial. According to papers filed by Dinh's appellate counsel in opposition to the *coram nobis* application, Dinh's counsel decided not to raise this claim on appeal because the amendment to the indictment was permissible under New York law.[6] *See* Affirmation in Response to Appellant's Petition for a Writ of Error *Coram Nobis* ¶ 12, *People v. Dinh*, 915 N.Y.S.2d 278 (App. Div. 2d Dep't 2010) (No. 2008-01853).

---

[6] To the extent Dinh asserts that his appellate counsel should have argued that the amendment of the indictment was a violation of the Fifth Amendment's Grand Jury Clause, this claim must fail. The Fifth Amendment right to indictment by a grand jury does not apply to state prosecutions. *See Alexander v. Louisiana*,

14

New York courts have repeatedly rejected similar claims that an indictment was improperly amended by deleting "acting in concert" language, even when this amendment is made during the course of trial. *See, e.g.*, *People v. Jackson*, 638 N.Y.S.2d 140, 140–41 (App. Div. 2d Dep't 1996); *People v. Adorno*, 628 N.Y.S.2d 426, 428 (App. Div. 3d Dep't 1995); *see also People v. Rivera*, 646 N.E.2d 1098, 1099–1100 (N.Y. 1995). These cases hold that there is no distinction between criminal liability as a principal or as an accomplice under New York law, and such amendment therefore does "not alter the theory of the People's case." *Jackson*, 638 N.Y.S.2d at 141. Indeed, New York law does not require the prosecution "to specify in an indictment whether a defendant is being charged as a principal or as an accomplice" at all. *People v. Guidice*, 634 N.E.2d 951, 954 (N.Y. 1994).

Dinh argues that allowing the amendment to the indictment just prior to charging the jury prejudiced his defense. He argues that, when he was charged as an accomplice, he had no reason to present evidence regarding which assailant caused serious physical injury to Zou, as Dinh would be liable even if one of the other assailants caused Zou's injuries. Once the prosecution charged him solely as a principal, however, it was crucial for the prosecution to prove that Zou's serious injuries were caused by Dinh. Had Dinh been initially charged as a principal, he argues that he would have presented evidence that these injuries were caused by someone else. Because the amendment was not made until after the close of evidence, Dinh argues that he was prejudicially denied his opportunity to present such evidence.

While Dinh's argument may have had some merit at trial,[7] the issue in this setting is whether the failure by appellate counsel to raise it as an argument on appeal constituted

---

405 U.S. 625, 633 (1972). It was entirely appropriate for Dinh's counsel not to argue that a non-existent right had been violated.

[7] Dinh was on notice that the deletion of the "acting in concert" language was a serious possibility after the prosecution rested. However, he still did not present evidence that someone else had caused Zou's serious

15

constitutionally defective assistance. As noted above, New York courts have routinely held that it is permissible to amend an indictment to delete "acting in concert" language. I have been able to identify only one New York case – a trial court decision from 1980 – holding that such an amendment was improper. *See People v. Hill*, 424 N.Y.S.2d 655, 656 (Sup. Ct. Bronx Cnty. 1980) (denying motion to strike "acting in concert" from indictment because "this would clearly change the theory of the prosecution as reflected by the evidence before the grand jury").

Dinh's theory of prejudice is, at best, a novel theory that appellate counsel should not be faulted for not pursuing. *See Pena v. United States*, No. 95 CR. 130 (AGS), 2000 WL 1568322, at *2 (S.D.N.Y. Oct. 20, 2000); *see also United States v. Baynes*, 687 F.2d 659, 668 n.11 (3d Cir. 1982), *abrogated in part on other grounds by Strickland*, 466 U.S. 668. Given the deference owed to appellate counsel's reasoned judgment as to which arguments to raise on appeal and the deference owed to the Appellate Division's rejection of Dinh's ineffective assistance claim, Dinh has not demonstrated his entitlement to habeas relief on this ground. *See Richter*, 131 S. Ct. at 788 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (internal quotation marks and citations omitted)).

        3.      *Failure To Challenge the Sufficiency of the Evidence*

Dinh argues that his appellate counsel should have argued that the evidence was insufficient to establish that he caused serious physical injury to Zou, a necessary element of the gang assault and assault counts. Serious physical injury is defined under New York law as "physical injury which creates a substantial risk of death, or which causes death or serious and

---

injuries. Nor did he seek a continuance to obtain such evidence or otherwise claim that he was prejudiced in the specific manner he now asserts. I need not address how these circumstances would have impacted the merit of Dinh's claim that the amendment was improper had he raised the claim on appeal.

16

protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00(10).

The evidence regarding Zou's injuries included testimony from Zou as well as a paramedic and a doctor who treated him. The evidence showed that Zou suffered, *inter alia*, a fracture of the orbital bone in his right eye. Trial Tr. 436. Zou testified that since the beating, he had continued to suffer blurry vision and soreness in his eyes, *id.* at 411, a concavity in the side of his head, *id.* at 412, and back pain, *id.* at 414. He could not work for four to five months after the incident. *Id.* at 411. The evidence also showed that, while others punched or kicked Zou, only Dinh hit Zou with a bar stool.

An argument that this evidence was insufficient to establish that Dinh caused serious physical injury to Zou may not have been frivolous. *Cf. People v. Rosado*, 930 N.Y.S.2d 10, 10–11 (App. Div. 1st Dep't 2011) (holding that evidence of a broken nose, chipped teeth, and indentation of victim's nose after surgery were legally insufficient to establish serious physical injury). However, as noted above, appellate counsel is not obligated to raise all non-frivolous arguments. *See Robbins*, 528 U.S. at 288. Here, the evidence showed not just that Zou had suffered a bone fracture, but that he continued to have vision problems and other medical issues as a result, even months after the assault. This was likely sufficient to establish protracted impairment of the function of a bodily organ, and thus serious physical injury, under New York law. *See People v. Knapp*, 623 N.Y.S.2d 355, 357 (App. Div. 3d Dep't 1995).

Furthermore, a jury could reasonably infer that Dinh had caused this injury from viewing the video of the assault, since Dinh was responsible for the most vicious portion – striking Zou in the head with a bar stool. As with the amendment to the indictment, it was both

17

reasonable for appellate counsel not to make a sufficiency argument and for the Appellate Division to hold that there was no ineffective assistance.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. As Dinh has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
       December 16, 2011